# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

Nº 07-CV-3245 (JFB) (MLO)

_____

CHRISTIANE MCCOWAN,

Plaintiff,

VERSUS

HSBC BANK USA, N.A.,

Defendant.

_____

**MEMORANDUM AND ORDER**
February 12, 2010

_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Christiane McCowan ("McCowan" or "plaintiff") brings this action alleging employment discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 _et seq._ ("ADA") and New York State Human Rights Law, N.Y. Exec. Law §§ 296 _et seq._ ("NYSHRL") against defendant HSBC Bank USA, N.A. ("HSBC" or "defendant"). Specifically, plaintiff alleges the following: (1) defendant discriminated against plaintiff by terminating her because of her actual disability, record of disability, and/or perceived disability – namely, depression; (2) defendant retaliated against plaintiff by terminating her for expressing her intention to file a formal complaint against her supervisor at work; and (3) defendant subjected plaintiff to a hostile work environment based upon her disability.

Defendant has moved for summary judgment. For the reasons set forth below, the defendant's summary judgment motion is denied in part and granted in part. First, the Court concludes, after carefully reviewing the record in this case, viewing all facts in the light most favorable to plaintiff and drawing all reasonable inferences therefrom in plaintiff's favor, that disputed issues of material fact exist with respect to plaintiff's claims of discrimination based on actual disability under the NYSHRL, record of disability under the ADA and NYSHRL, and perceived disability under the ADA and NYSHRL, claim of a hostile work environment based upon actual disability (under the NYSHRL) or perceived disability, and plaintiff's claim that defendant retaliated against her for threatening to bring a formal complaint or lawsuit against her supervisor. Thus, those claims survive summary judgment.

However, the Court concludes that plaintiff has not presented evidence sufficient to raise genuine issues of material fact regarding plaintiff's claim of discrimination based upon actual disability under the ADA. In particular, the undisputed evidence demonstrates that, at the time of the alleged adverse employment actions in 2006 (namely, her denial of a pay increase/ bonus and her termination), plaintiff was not suffering from a disability that substantially limited a major life activity because she was not experiencing any symptoms of depression at that time. Thus, summary judgment is warranted on the actual disability claim under the ADA.

## I. BACKGROUND

### A. Facts

The following facts are taken from the parties' depositions, declarations, exhibits and respective Local Rule 56.1 statements of facts.[1]  Upon consideration of a motion for summary judgment, the Court construes the facts in the light most favorable to the non-moving party. *See Capobianco v. City of N.Y.*, 422 F.3d 47, 50 n.1 (2d Cir. 2005). Thus, the Court shall construe the facts in favor of the plaintiff.

### 1. Plaintiff's Employment with HSBC

Plaintiff worked for defendant HSBC and its predecessor, Marine Midland Bank, from February 1982 until her termination on April 11, 2006.  (Def.'s 56.1 ¶ 2.)  For the last fifteen years of her employment with HSBC, plaintiff worked in HSBC's Commercial Lending Department for the Long Island area as a Senior Commercial Support Specialist. (*Id.* ¶ 3.) Prior to her termination, she held the position of Senior Commercial Support Specialist in the Relationship Support Unit ("RSU"). (*Id.* ¶ 4.) In this position, plaintiff's responsibilities included providing clerical support for lending officers by processing loan documentation. (*Id.* ¶ 5; Pl.'s 56.1 ¶ 5.) Two other employees, Noel Tam and Pui Lau, were also employed in the RSU in the same position as plaintiff. (Def.'s 56.1 ¶ 9.)

From 1999 until plaintiff's termination, Michelle Lin was the RSU Manager and plaintiff's direct supervisor. (*Id.* ¶ 6.) Joanne Carboneri was also employed in the RSU as a Relationship Support Officer and was in charge of the RSU when Ms. Lin was absent. (*Id.* ¶ 8.)  During the same period of time, Philip Panarelli was the Senior Manager of HSBC's Commercial Lending Group. (*Id.* ¶ 7.) He oversaw the RSU and was Ms. Lin's direct supervisor. (*Id.*)

### 2. Plaintiff's Disability Leaves

In June 2000, plaintiff took a two-month disability leave from work due to depression. (*Id.* ¶ 10.) In 2002, plaintiff took another two-month disability leave due to her depression. (*Id.* ¶ 11.)  Plaintiff returned to work thereafter and alleges that she did not experience symptoms of depression immediately following her return. (Pl.'s 56.1 ¶ 12.)  In January 2005, plaintiff took a third disability leave for depression.  She returned to work in April 2005. (Def.'s 56.1 ¶ 13.) Again, at the time of her return, plaintiff did not experience symptoms of depression. (Pl.'s 56.1 ¶ 14.)

When plaintiff was on leave due to depression, she alleges that she was unable to

---

[1]  Where only one party's 56.1 statement is cited, the fact is not contested by the other party or the other party has offered no evidence to controvert that fact.

leave her house, was unable to eat or sleep, and unable to "function" generally when experiencing symptoms of her disability. (*Id.* ¶ 15; Def.'s 56.1 ¶ 15.)

### 3. Plaintiff's Performance

As plaintiff's supervisor, Ms. Lin was responsible for evaluating plaintiff's performance at HSBC. Ms. Lin rated plaintiff with an overall performance rating of "3," or "Good," on her 2003 evaluation but rated plaintiff as a "4," or "Marginal," rating for cooperation. (Def.'s 56.1 ¶ 16; Declaration of Michelle Lin (hereinafter "Lin Dec.") ¶ 3.)

On January 30, 2004, Ms. Lin requested that plaintiff clean out a closet so that it could be used to store files. (Def.'s 56.1 ¶ 17.) Defendant alleges that plaintiff "refused" to clean out the closet (*id.*), but plaintiff alleges that she told Ms. Lin she "was unable to" clean out the closet due to a severe dust allergy, which plaintiff claims to have discussed with Ms. Lin on several prior occasions. (Pl.'s 56.1 ¶ 17; *compare* Pl.'s 56.1 ¶¶ 17-18 *with* Def.'s 56.1 ¶¶ 17-18.) Plaintiff also alleges that Ms. Lin "never asked plaintiff's co-workers to clean closets." (*Id.* ¶ 18.) On February 5, 2004, plaintiff received a "Final Written Warning" from Ms. Lin during her employee interim job discussion, which appeared to be related to the dispute regarding Ms. Lin's directive to clean out the closet. (*Id.* ¶ 18.) The Final Written Warning also referenced a discussion that Ms. Lin had with plaintiff in September 2003, regarding plaintiff's conduct toward her coworkers and Ms. Lin. (Def.'s 56.1 ¶ 19.) Plaintiff thereafter submitted a written response to the warning. (*Id.* ¶ 20.)

According to plaintiff, on April 5, 2004, she received a second interim job discussion,

which indicated that her probation period due to the Final Written Warning ended effective April 5, 2004, that her performance had improved, that she had demonstrated teamwork on a daily basis, and that she was removed from the Final Written Warning. (Pl.'s 56.1 ¶ 21.)

On plaintiff's May 2005 evaluation for the 2004 work year, Ms. Lin rated plaintiff with an overall performance rating of "3," or "Good," but rated her score for cooperation a "4," or "Marginal." (Def.'s 56.1 ¶ 22.)

In July and September 2005, plaintiff and Ms. Lin had meetings regarding plaintiff's lateness to work, the nature of which is disputed by the parties. (Def.'s 56.1 ¶¶ 23-25; Pl.'s 56.1 ¶¶ 23-25.) According to defendant, Ms. Lin told plaintiff that it was unacceptable to come to work late, but plaintiff continued to come to work late on occasion. (Def.'s 56.1 ¶¶ 23-24.) Defendant alleges that one incident involved plaintiff reporting to work twenty minutes late. (*Id.* ¶ 25.) Plaintiff alleges that she was rarely late but, if late, she would make up the time on her lunch break. (Pl.'s 56.1 ¶¶ 23-24.) Plaintiff alleges that Ms. Lin told plaintiff it was unacceptable to make up lost time due to lateness during her lunch break. Regarding the specific incident where plaintiff was twenty minutes late, plaintiff alleges that she arrived late to work one morning due to problems with a squirrel in her attic. (*Id.* ¶ 24.) Plaintiff contends that she apologized and explained her tardiness to Joanne Carboneri, and Ms. Carboneri reported this incident to Ms. Lin. (*Id.* ¶¶ 24-25.) Plaintiff was subsequently reprimanded by Ms. Lin for the lateness. (*Id.*) According to defendant, plaintiff walked out of the September 2005 meeting regarding her consistent tardiness before it ended (Def.'s 56.1 ¶ 26), but plaintiff alleges that she left

the meeting "after Ms. Lin refused to speak with her privately." (Pl.'s 56.1 ¶ 26.)

Subsequently, on September 12, 2005, Ms. Lin gave plaintiff an interim job discussion, at which she told plaintiff that she had been reporting to work late and that she was required to report to work by 8:30 a.m. (Def.'s 56.1 ¶ 27.) Defendant also asserts that, some time in 2005, plaintiff did not process a document in a timely manner. (Def.'s 56.1 ¶ 28.) Plaintiff claims that she did not receive the document in the proper manner that she usually received time-sensitive documents but does not dispute that she did not process the document that day. (Pl.'s 56.1 ¶ 28.) During the 2005 mid-year review, plaintiff told Ms. Lin that Ms. Lin was "twisting" her words, and plaintiff accused Ms. Lin of stabbing plaintiff in the back. (Def.'s 56.1 ¶ 29.) Ms. Lin rated plaintiff with an overall performance rating of "4," or "Marginal," on plaintiff's 2005 evaluation, which plaintiff received in January 2006. (Def.'s 56.1 ¶ 30.) Plaintiff submitted a written response to her 2005 evaluation. (*Id.*) Plaintiff asserts that her negative 2005 evaluation resulted in her not receiving a pay increase or bonus for the year 2005, even though she had received a pay increase and bonus every year for at least the prior ten years. ((Pl.'s Ex. A, Aff. of Christiane McCowan (hereinafter "McCowan Aff.") ¶ 18.)

Finally, defendant alleges that plaintiff was involved in at least one personal telephone call at work each day. (Def.'s 56.1 ¶ 31.) Plaintiff disputes this and alleges that she generally did not make or receive personal phone calls at work after she was reprimanded by Ms. Lin for doing so on one occasion, when she was on a call with the District Attorney's Office regarding the investigation of her mother's death. (Pl.'s 56.1 ¶ 31.)

### 4. Plaintiff's Termination

In April 2006, Mr. Panarelli decided to transfer supervision of plaintiff from Ms. Lin to Ms. Carboneri. (Def.'s 56.1 ¶ 32.) On April 11, 2006, Mr. Panarelli and Ms. Lin had a meeting with plaintiff in Mr. Panarelli's office, in which Javier Evans, a member of the Human Resources Department, participated via telephone. (Def.'s 56.1 ¶ 33.) During the conference, plaintiff was told that Ms. Carboneri would be her new supervisor. (*Id.* ¶ 34.) The defendant and plaintiff offer drastically different accounts regarding plaintiff's response to the notification that she would be reporting to Ms. Carboneri. According to defendant, upon being told that she would report to Ms. Carboneri, plaintiff "became upset, said that she refused to report to Ms. Carboneri and walked out of the room without being excused." (Def.'s 56.1 ¶ 35.) After plaintiff left the meeting, defendant alleges, Mr. Panarelli decided to terminate plaintiff for insubordination, and Mr. Evans informed plaintiff of her termination. (*Id.* ¶¶ 36-37.)

Plaintiff alleges that when she was told she would be now reporting to Ms. Carboneri, she asked how reporting to Ms. Carboneri would be any different from reporting to Ms. Lin but received no reply. (Pl.'s 56.1 ¶ 33.) Plaintiff claims that she was given no response to this inquiry, but was told by Mr. Panarelli to "think it over." (*Id.*) At that point, plaintiff alleges that she was feeling ill so she went to the ladies room. She was thereafter called to Mr. Panarelli's office to discuss the matter further with Mr. Panarelli, Ms. Lin, and Ms. Carboneri. Plaintiff alleges that she again felt nauseated, so she excused

herself to the ladies room. (*Id.*) Plaintiff contends that when she returned, Ms. Lin and Ms. Carboneri were at their desks, so she returned to her desk. (*Id.*) At that point, she was called by Mr. Evans, who informed her that she was being terminated. (*Id.*) Plaintiff contends that Mr. Evans incorrectly believed that plaintiff had told Mr. Panarelli that she would not report to Ms. Carboneri. Plaintiff informed Mr. Evans that this was not true, and he said that he would call her back. (*Id.*) Plaintiff contends that Mr. Evans called her back to inform her that "Phil wants you out." (*Id.*) Plaintiff alleges that she was not terminated due to insubordination but rather that the decision to terminate her employment was made months before April 11, and was due to her disability. (*Id.* ¶ 36.)

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on September 22, 2006. (Def.'s 56.1 ¶ 44.)

### 5. The Instant Complaint

Plaintiff brings several claims against defendant relating to her termination. Specifically, plaintiff alleges that she was discriminated against due to her disability – namely, depression. Plaintiff also alleges that she was retaliated against for filing complaints regarding the manner in which she was being treated. Lastly, plaintiff alleges that she was subjected to a hostile work environment at HSBC after her return from disability leave.

### B. Procedural History

On August 6, 2007, plaintiff initiated the instant action. On June 12, 2009, defendant moved for summary judgment. Plaintiff filed her opposition papers on July 29, 2009, and defendant's reply was filed on August 21, 2009. Oral argument was held on September 24, 2009. This matter is fully submitted.

## II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (emphasis

in original)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

The Second Circuit has provided additional guidance regarding summary judgment motions in discrimination cases:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g., Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)).

## III. DISCUSSION

### A. The Americans with Disabilities Act

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA defines "disability" as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;[2]

---

[2] As discussed further *infra*, New York Human Rights Law defines disability more broadly than the ADA.

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). To establish a prima facie case of discrimination under the ADA or New York Human Rights Law,[3] an employee has the burden to demonstrate that: (i) the employer is covered by the statute and had notice of her disability; (ii) she was an individual who was disabled within the meaning of the statute; (iii) plaintiff was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (iv) she was subject to an adverse employment action as a result of her disability. *See Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869-70 (2d Cir. 1998).

Congress recently enacted the ADA Amendments Act of 2008 ("ADAAA"), effective January 1, 2009, which expanded the class of individuals entitled to protection under the ADA. As the Ninth Circuit has explained:

> In the ADAAA, Congress emphasizes that when it enacted the ADA in 1990, it "intended that the Act 'provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities' and provide broad coverage." The ADAAA rejects the Supreme Court's interpretation of the term "disability" in *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999), and *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002), and thereby expands the class of individuals who are entitled to protection under the ADA.

*Rohr v. Salt River Project Agric. Imp. and Power Dist.*, 555 F.3d 850, 853 (9th Cir. 2009) (citations omitted). However, this Court and other courts have stated that the ADAAA does not apply to conduct that occurred prior to the effective date of the statute. *See, e.g.*, *Schroeder v. Suffolk County Cmty. College*, No. 07-CV-2060 (JFB) (WDW), 2009 WL 1748869, at *6 (E.D.N.Y. June 22, 2009) (collecting cases); *see also Cody v. County of Nassau*, No. 08-5127-cv, 2009 WL 2958742, at *3 (2d Cir. Sept. 16, 2009) (summary order) ("[I]t is unlikely that the ADA Amendments Act of 2008 . . . applies to conduct that occurred before the Act's effective date of January 1, 2009. We need not decide the retroactivity issue . . . ."); *White v. Sears, Roebuck & Co.*, No. 07 Civ. 4286 (NGG) (MDG), 2009 WL 1140434, at *5 (E.D.N.Y. Apr. 27, 2009) ("The court therefore . . . concludes that the [ADAAA] should not apply to this case. This is consistent with the conclusions of other courts

---

[3] A claim of disability discrimination under the New York State Human Rights Law, N.Y. Exec. Law §§ 290-301 (McKinneys 2005), is governed by the same legal standards that govern federal ADA claims. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 n.1 (2d Cir. 2000). Thus, to the extent that plaintiff brings state-law disability-discrimination claims, those would survive or fail on the same basis as her ADA claims, except where otherwise noted in this opinion.

in this circuit that the 2008 Amendments do not apply to conduct prior to the effective date of the amended statute.") (collecting cases); *Moran v. Premier Educ. Group, LP*, 599 F. Supp. 2d 263, 271-72 (D. Conn. 2009) ("[I]t appears that every court that has addressed this issue, which includes a number of federal district courts and at least one federal appeals court, has concluded that the 2008 Amendments cannot be applied retroactively to conduct that preceded its effective date.") (collecting cases). Thus, the Court must evaluate plaintiff's evidence within the legal framework in place at the time of the alleged behavior, which is 2005-2006.

### 1. Prima Facie Case

#### a. Employer Coverage and Notice under the ADA

As a private employer with more than fifteen employees, defendant HSBC does not contest that it is subject to the ADA. *See* 42 U.S.C. § 12111(5)(A). Defendant also does not contest that it had notice of plaintiff's alleged disability. Plaintiff's disability had required her to take several extended leaves of absence from work, and she reported that disability to her supervisors at HSBC. (Pl.'s Ex. D, Deposition of Michelle Lin (hereinafter "Lin Dep."), at 15:6-9; *see* Pl.'s Ex. C, Deposition of Christiane McCowan (hereinafter "McCowan Dep.") at 118:17-24.)

#### b. Disability Claim

#### (i) Actual Disability[4]

#### (1) Disability Claim under the ADA

"In determining whether an individual has a disability for purposes of the ADA and Section 504 [of the Rehabilitation Act], we have applied the three-step approach taken by the Supreme Court in *Bragdon v. Abbott*, 524 U.S. 624, 118 S. Ct. 2196, 141 L. Ed. 2d 540 (1998)." *Weixel v. Board of Educ. of City of New York*, 287 F.3d 138, 147 (2d Cir. 2002). The Second Circuit has elaborated:

> Under the [*Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 641 (2d Cir. 1998) (adopting *Bragdon*)] analysis, plaintiff must first show that she suffers from a physical or mental impairment. Second, plaintiff must identify the activity claimed to be impaired and establish that it constitutes a "major life activity." Third, the plaintiff must show that her impairment "substantially limits" the major life activity previously identified. In addition, the Supreme Court has recently clarified that the identified major life activity must be "of central importance to daily life." *Toyota Motor Mfg. v. Williams*, 534 U.S.

---

[4] For ease of reference, the Court refers to a "physical or mental impairment that substantially limits one or more of the major life activities of such individual" under 42 U.S.C. § 12102(1)(A) as an "actual disability."

8

184, 122 S. Ct. 681, 691, 151 L. Ed. 2d 615 (2002).

*Id.* (additional citations omitted). Major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I). An impairment substantially limits a major life activity other than work if it prevents an individual from performing an activity that the average person in the general population can perform, or if it significantly restricts the duration, manner, or condition under which an individual can perform the activity as compared to the ability of the average person in the general population. *See* 29 C.F.R. § 1630.2(j)(1). Courts may consider the following factors in this analysis: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment. *See* 29 C.F.R. § 1630.2(j)(2).

The determination as to whether or not plaintiff is disabled within the meaning of the statute requires "an individualized, fact-specific analysis." *Worthington v. City of New Haven*, No. 3:94 Civ. 00609 (EBB), 1999 WL 958627, at *8 (D. Conn. Oct. 5, 1999) (citations omitted). To prove disability under this test, an individual must do more than "merely submit evidence of a medical diagnosis of an impairment." *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 197 (2002). Instead, "the ADA requires those 'claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by the impairment] in terms of their own experience . . . is substantial.'" *Toyota*, 534 U.S. at 198 (quoting *Albertson's Inc. v. Kirkingburg*, 527 U.S. 555, 567 (1999)).

In order for plaintiff to fall within the protections of the ADA under a claim of actual disability, she bears the burden of demonstrating that she has a "physical or mental impairment that substantially limits one or more [of her] major life activities." 42 U.S.C. § 12102(2)(A). Under *Colwell*, plaintiff must first show that she suffers from a physical or mental impairment. In this case, plaintiff has presented evidence that she suffers from depression. Depression may qualify as a mental impairment under the ADA. *See, e.g.*, *Menes v. City Univ. of N.Y.*, 92 F. Supp. 2d 294, 303 (S.D.N.Y. 2000), *overruled on other grounds by Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009). Plaintiff argues that she had a disability at the time of her discharge in April 2006. Plaintiff submitted evidence that she had been diagnosed with Major Depressive Disorder. (Pl.'s Ex. B ¶ 4; Pl.'s Ex. BB.)

Under the ADA, a mental impairment does not rise to the level of a "disability" unless such impairment "substantially limits" a major life activity. Thus, plaintiff must identify the activity or activities claimed to be impaired and establish that it constitutes a "major life activity." In addition, the plaintiff must show that his impairment "substantially limits" that major life activity. Plaintiff asserts that her depression rendered her substantially limited in the major life activities of "eating, sleeping, working, and functioning in her life during depressive episodes." (Pl.'s Opp. at 10 (citing Ex. B ¶¶ 7, 9-10, 12; Ex. C at 35-36).)

Although plaintiff contends that the evidence demonstrates that she had an actual disability, an individual does not have an

actual disability under the ADA unless she is disabled at the time of the adverse employment action: "[a]n action for employment discrimination brought pursuant to the . . . ADA, is properly resolved by granting summary judgment to the defendant employer where the plaintiff was not a handicapped or disabled person within the meaning of the acts at the time of the adverse employment decision." *Joyce v. Suffolk County*, 911 F. Supp. 92, 98 (E.D.N.Y. 1996). Here, based upon the undisputed facts, plaintiff cannot demonstrate that she suffered from a disability at the time of the alleged adverse employment decisions. According to plaintiff's own testimony, she "was not experiencing symptoms of depression immediately following her return to work in 2002" and "was not experiencing symptoms of depression immediately following her return to work in 2005." (Pl.'s 56.1 ¶¶ 12, 14.) Plaintiff also stated at her deposition that she was not depressed when she returned to work after her leaves in 2002 and 2005:

> Q: When you returned to work in 2002 from Disability leave, were you still depressed?
>
> A: No.
>
> Q: When you returned from leave in or about April 2005, from Disability leave, were you still depressed?
>
> A: When I returned?
>
> Q: Yes.
>
> A: No.

(Def.'s Ex. M, McCowan Dep. at 35:9-18.) Plaintiff has not presented evidence that her symptoms of depression returned at any point after she resumed work in April 2005 until her termination in April 2006. Therefore, the undisputed evidence demonstrates that plaintiff is unable to claim relief under the ADA on the basis of discrimination due to an actual disability at the time of the alleged adverse employment actions. *See Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 726 (2d Cir. 1994) (affirming dismissal of plaintiff's claim because "at the time the adverse employment decision was made [plaintiff] was not a handicapped person under the Act"); *Campbell v. Home Depot U.S.A., Inc.*, No. 03CV1421(KMK)(HBP), 2006 WL 839001, at *5 n.4 (S.D.N.Y. Mar. 30, 2006) ("Plaintiff has not provided any evidence that she had, *at the relevant time*, an impairment which substantially limited one or more life activities or that Defendant regarded her as having such an impairment. Therefore, Plaintiff has not substantiated a putative claim that she was disabled under the ADA . . . .") (emphasis added); *Picinich v. United Parcel Serv.*, 321 F. Supp. 2d 485, 500 (N.D.N.Y. 2004) ("[T]he court's focus must be on whether [plaintiff] was disabled 'at the time the adverse action occurred.'" (quoting *Monroe v. Cortland County, N.Y.*, 37 F. Supp. 2d 546, 553 (N.D.N.Y. 1999))).

The Court thus concludes, after careful consideration of the record in this case, that there are no disputed issues of material fact as to whether plaintiff was, at the time of the adverse employment action, substantially limited in the major life activities of eating, sleeping, working, or generally functioning in her life. Thus, plaintiff was not actually disabled within the meaning of the ADA at the time of defendant's alleged conduct.

(2) Actual Disability Claim under NYSHRL

Plaintiff correctly notes that the definition of "disability" is broader under the NYSHRL than it is under the ADA. *See State Div. of*

*Human Rights v. Xerox Corp.*, 65 N.Y.2d 213, 218-19 (1985); *Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 155 (2d Cir.1998) ("Regardless of the [fact that the] legislative history of the [NYSHRL indicates] that the statutory definition of disability was intended to be coextensive with that of the federal disability statutes, we are bound by the construction of the statute propounded by the state's highest court."). In New York, the term "disability" is not limited to physical or mental impairments, but "may also include 'medical' impairments. In addition, to qualify as a disability, the condition may manifest itself in one of two ways: (1) by preventing the exercise of a normal bodily function or (2) by being 'demonstrable by medically accepted clinical or laboratory diagnostic techniques.'" *Xerox Corp.*, 65 N.Y.2d at 218-19; *see* N.Y. Exec. Law § 292(21) ("The term 'disability' means a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques."). Thus, under state law, a disability need only be a demonstrable impairment; it does not have to substantially limit a major life activity. See *Reeves*, 140 F.3d at 154.

As noted above, depression can constitute a disability under both the ADA and NYSHRL. *See Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 541 (S.D.N.Y. 2009) ("As defendants concede, both the State and the City recognize depression as a 'disability.' Therefore, [plaintiff] has satisfied the first test for getting to trial on her non-federal disability claims as well."); *cf. Matya v. Dexter Corp.*, 250 F. App'x 408, 410 (2d Cir. 2007) (affirming district court decision that assumed that plaintiff who had depression had demonstrated a "disability" under the NYSHRL). Although McCowan's depression did not "substantially limit" her "major life activities" at the time of the adverse employment actions, McCowan has presented sufficient evidence to create a genuine issue of fact as to whether her depression was "demonstrable by medically accepted clinical or laboratory diagnostic techniques" at that time. *See* N.Y. Exec. Law § 292(21). Specifically, McCowan presented an affidavit of her treating doctor, Dr. Diana Su, stating that McCowan's "symptoms [of Major Depressive Disorder] improved and she was able to return to work in or about September 2000. However, I continued treating her for depression on and off through June 2006." (Pl.'s Ex. B Aff. of Diana Su ¶ 5; *see also* Pl.'s Ex. BB, Medical Records.) Accordingly, if the evidence presented by plaintiff is credited, a reasonable jury could find that she had a disability within the meaning of the NYSHRL at the time of HSBC's alleged adverse employment actions.

(ii) "Regarded As" Disabled Claim

Plaintiff also claims that defendants discriminated against her in violation of the ADA and NYSHRL on the basis of a perceived disability. Plaintiff claims she qualifies under the ADA and NYSHRL as disabled based on the third subsection – namely, that she was perceived as having a disability that substantially limits one or more of the major life activities of such individual. Specifically, plaintiff contends that she has a "regarded as disabled" claim against HSBC based upon Ms. Lin's perception that she was significantly restricted in her ability to work due to her depression. (Pl.'s Opp. at 11.) As set forth below, the Court concludes that plaintiff's "regarded as" claim survives summary judgment.

"Under 42 U.S.C. § 12102(2)(c)

("regarded as disabled"), the decisive issue is the employer's perception of his or her employee's alleged impairment." *Giordano v. City of N.Y.*, 274 F.3d 740, 748 (2d Cir. 2001). A plaintiff "is regarded as having an impairment" if she:

> (1) has a physical or mental impairment that does not substantially limit major life activities but is treated by an employer as constituting such a limitation; (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitude of an employer toward such impairment; (3) or has none of the impairments defined in (b) of this section but is treated by an employer as having such an impairment.

29 C.F.R. § 1613.702(e). To succeed under this "perceived" or "regarded as" ADA claim, a plaintiff must show more than "that the employer regarded that individual as somehow disabled; rather, the plaintiff must show that the employer regarded the individual as disabled within the meaning of the ADA." *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 201 (2d Cir. 2004) (quoting *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 646 (2d Cir. 1998)). The Supreme Court has stated that an employee can be "regarded as" disabled in two ways: "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 481 (1999), *overturned by* 42 U.S.C. § 12102. Plaintiff's claims fall in the second category—she alleges that defendant mistakenly believed that plaintiff's actual, nonlimiting impairment, namely, her

depression, substantially limited her in the major life activity of working. (Pl.'s Opp. at 11.) This requires a demonstration that defendant "perceived [plaintiff] to be incapable of working in a broad range of jobs suitable for persons of her age, experience, and training." *Colwell*, 158 F.3d at 647 (citation omitted). Defendant contends that plaintiff cannot make this showing because neither Ms. Lin nor Mr. Panarelli considered plaintiff to be unable to work in a broad class of jobs.

The Court concludes that plaintiff has set forth sufficient evidence to create a triable issue of fact regarding whether defendant regarded plaintiff as disabled. Specifically, plaintiff has submitted evidence that Ms. Lin made remarks in front of plaintiff about depression and depressed individuals. Plaintiff has also submitted evidence that Ms. Lin restricted plaintiff to performing entry-level tasks and Ms. Lin made statements regarding plaintiff's inability to resume her role at work when she returned from disability leave. (McCowan Aff. ¶ 11 ("Lin frequently remarked in front of my colleagues and members of Human Resources that the RSU functioned fine without me during my disability leave, that I was 'slow' and was not as good as my co-workers."); *id.* ¶ 12 ("After I returned from my last disability leave, Lin stated to me again, 'You must have cracked.' . . . Lin gave me entry-level assignments and spelled out instructions for tasks I had performed for 20 years. She treated me as though I had become brain damaged and could no longer function in the job I held for 24 years."). Upon plaintiff's return, Ms. Lin instructed plaintiff's coworkers to "give [her] a chance, she may have questions." (McCowan Aff. ¶ 17.) Viewing this evidence in the light most favorable to plaintiff, a reasonable juror could find that Ms. Lin was suggesting that plaintiff would not be capable

of performing her job upon her return because of her depression. There is also direct evidence that Ms. Lin did regard plaintiff as unable to perform her job upon her return from leave. Specifically, at her deposition, Ms. Lin testified:

Q: After twenty-four years as an employee of HSBC, were you saying that Ms. McCowan was unable to perform the duties of a special support specialist when she came back from disability leave?

\* \* \*

A: She tried her best to perform to assume her role when she first came back and then issues – all the other issues that we stated here started to arise.

Q: But what do you mean 'she tried her best'? Does that mean that she was unsuccessful?

A: Yes.

(Lin Dep. at 121:7-21.) Ms. Lin also reported to Mr. Panarelli, and Mr. Panarelli agreed, that plaintiff was only capable of answering the telephone and filing. (*See* Pl.'s Ex. L, Email from Michelle Lin to Philip Panarelli, Feb. 27, 2006 ("If you still want to keep her employment with the Bank, I suggest that we assign her to handle special projects only (e.g., filings, pick up the RSU Dept. Phone).")). Mr. Panarelli testified that he agreed with Ms. Lin's assessment of plaintiff's abilities:

A: I agreed with that decision, yes.

Q: You agreed that Chris should handle only filing and picking up the phone in February of 2006?

A: Michelle – Michelle was her manager. Whatever Michelle felt was important, however she wanted to handle the group. I respected Michelle and I let Michelle run the department.

(Pl.'s Ex. F, Deposition of Philip Panarelli (hereinafter "Panarelli Dep.") at 61:9-17.)

Plaintiff also testified at her deposition that other coworkers treated her differently after she returned from her disability leave in 2005. Specifically, plaintiff alleges that her coworker, Ms. Carboneri, treated her as though she lacked intellectual ability and was incapable of performing her job. (McCowan Dep. at 111:1-9 (stating that upon her return to work, Ms. Lin and Ms. Carboneri insinuated that plaintiff was "stupid" and knew "nothing . . . because of depression").) Plaintiff also testified that Ms. Lin stated that plaintiff "must have cracked," (McCowan Dep. at 111:20–113:14) and "had no manners." (McCowan Dep. at 112:25, 113:23-25.) Plaintiff further asserts that Ms. Lin accused plaintiff of making errors that were in fact made by other employees and criticized McCowan loudly and harshly in front of coworkers for "very minor infractions." (McCowan Aff. ¶ 8.)

The Court recognizes that plaintiff "bears the burden of demonstrating that her employer 'perceived her to be incapable of working in a broad range of jobs' suitable for one of similar age, experience, and training." *Johnson v. City of N.Y.*, 326 F. Supp. 2d 364, 369-70 (E.D.N.Y. 2004) (quoting *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d at 872). The Court concludes that plaintiff's evidence is sufficient to survive summary judgment on that issue. Accepting plaintiff's evidence as

true and drawing all reasonable inferences in her favor, a reasonable jury could conclude that Ms. Lin and Mr. Panarelli regarded plaintiff as incapable of performing jobs that required completion of tasks other than filing and answering telephones. This would sufficiently demonstrate their belief that plaintiff was incapable of working in a broad range of jobs, as many jobs require tasks beyond filing and answering calls. *See Russo v. Sysco Food Servs. of Albany, L.L.C.*, 488 F. Supp. 2d 228, 235 (N.D.N.Y. 2007) (concluding that plaintiff was "perceived as" disabled under the ADA when plaintiff's employer "regarded plaintiff as unable to work in any job requiring the operation of trucks, forklifts, or any other company vehicle [because p]ositions requiring the operation of all vehicles and heavy equipment constitute[ ] a class of jobs"); *Greenberg v. N.Y. City Transit Auth.*, 336 F. Supp. 2d 225, 238 (E.D.N.Y. 2004) ("The simple fact that, following plaintiff's knee injury, plaintiff was restricted from working in any job that involved bending, crouching, crawling or kneeling and was reclassified to the position of TPAA reveals that he was regarded by defendant as being precluded from a broad class of jobs."); *Simms v. City of N.Y.*, 160 F. Supp. 2d 398, 405 (E.D.N.Y. 2001) ("As Plaintiff is precluded from more than one type of job within the [Fire] Department, the Court finds that Defendants regard Plaintiff as being substantially limited in his ability to work."). Thus, after carefully analyzing the evidence in this case, the Court finds that plaintiff has presented sufficient evidence to survive summary judgment on the issue of whether she was perceived as being a "qualified individual with a disability" within the meaning of the ADA and the NYSHRL.

(iii) Record of Disability Claim[5]

The ADA[6] also prohibits discrimination against persons with a record of disability in order to "ensure that people are not discriminated against because of a history of disability." 29 C.F.R. pt. 1630 App., § 1630.2(k). According to the EEOC:

> This part of the definition is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment. The impairment indicated in the record must be an impairment that would substantially limit one or more of the individual's major life activities.

*Id.* The record must be one that shows an

_____

[5] Although plaintiff did not use the term "record of disability" in her complaint, she alleged specifically that she had her thyroid removed, which resulted in her experiencing bouts of depression and that this required her to take several disability leaves of absence from her employment. (Compl. ¶¶ 17-18.) Plaintiff's complaint also alleged that her supervisors, including Ms. Lin, were aware of plaintiff's severe depression when she was required to take leave. (*Id.*) It is clear from the record that the issues associated with plaintiff's "record of disability" claim were fully explored during discovery and that defendant has not been prejudiced in any way by plaintiff's inclusion of this claim. Accordingly, the Court construes plaintiff's complaint as alleging such a claim.

[6] For the purposes of this summary judgment motion, analysis of plaintiff's claims under the ADA and NYSHRL yields the same results. *See, e.g., Morris v. City of N.Y.*, 153 F. Supp. 2d 494, 499-500 (S.D.N.Y. 2001) ("For the purposes of this [summary judgment] motion, analysis of plaintiff's claims under the ADA and the NYSHRL is identical.").

impairment that satisfies the ADA; a record reflecting a plaintiff's classification as disabled for other purposes or under other standards is not enough. *See id.* As discussed *supra*, depression qualifies as a disability under the ADA and NYSHRL. Plaintiff has submitted evidence, which HSBC does not contest, that she had a record of depression, which substantially limited her ability to work when she was affected by it. Moreover, there is evidence that HSBC was aware of plaintiff's history of depression. Accordingly, plaintiff has presented sufficient evidence to survive summary judgment on the issue of whether she has a record of impairment under both the ADA and NYSHRL.

### c. Ability to Perform Job

Plaintiff has also presented sufficient evidence to survive summary judgment on the issue of whether she was fully capable of performing her position at HSBC without reasonable accommodation when she returned to work after her leave. Plaintiff was employed at HSBC for twenty-four years. Until her final evaluation, plaintiff did not receive unsatisfactory evaluations during her tenure at HSBC; she consistently received rankings that she met or exceeded expectations in her performance reviews. (*See* Pl.'s Ex. R, HSBC's Performance Evaluations of Plaintiff, 1984-2006.) Plaintiff's reviews, including those filed by Ms. Lin prior to the final review, indicate that plaintiff generally conducted herself in a professional manner and was cooperative with her peers and supervisors. (*Id.*) Mr. Panarelli's testimony affirms that, prior to Ms. Lin joining the RSU, he does not remember having any specific problems with plaintiff's performance and that he and plaintiff had a "good working relationship." (Panarelli Dep. at 14:13-21.) Although Ms. Lin gave plaintiff an overall negative final evaluation in January

2006 (for the 2005 annual year), plaintiff's performance evaluation stated that she "complete[d] her assignments on a routine basis and assume[d] additional responsibilities of the RSU staff when they [were] on vacation." (Pl.'s Ex. Q, HSBC Performance Evaluation of Plaintiff, 2006.) That evaluation also noted that plaintiff "serviced customers with courtesy" and "was willing to accept additional work and to try to resolve problem[s] independently." (*Id.*)

Plaintiff has also presented evidence that, during 2006, she completed her job tasks and addressed important matters with Ms. Lin. Specifically, plaintiff has presented evidence that on March 30, 2006, plaintiff sent Ms. Lin an email regarding her coworker's inadvertent payment of a fraudulent check. (Pl.'s Ex. T, Email from Christiane McCowan to Michelle Lin, Mar. 30, 2006.) In April 2006, plaintiff also advised Ms. Lin that she had discovered files that required significant time and effort to organize. (Pl.'s Ex. U, Emails from Christiane McCowan to Michelle Lin, Apr. 5, 2006 and Apr. 10, 2006.) Moreover, defendant argues that plaintiff was terminated for insubordination—not for an inability to perform her job properly. Accordingly, a reasonable jury could conclude that plaintiff was able to perform her job when she returned to work from disability leave and, thus, summary judgment on that issue in defendant's favor is unwarranted.

### d. Adverse Employment Action

Under the final prong of the four-part test for a prima facie claim under the ADA, plaintiff must demonstrate that she was subject to an adverse employment action as a result of her disability. *Ryan*, 135 F.3d at 869-70. A plaintiff suffers an adverse employment action:

if he or she endures a materially adverse change in the terms and conditions of employment. To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities [and it may] be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.

*Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (citations and internal quotation marks omitted). However, "less flagrant reprisals by employers may indeed be adverse." *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997). "Courts have held that termination, demotion, denial of promotion, addition of responsibilities, involuntary transfer that entails objectively inferior working conditions, denial of benefits, denial of a requested employment accommodation, denial of training that may lead to promotional opportunities, and shift assignments that make a normal life difficult for the employee, among other things, constitute adverse employment actions." *Little v. NBC*, 210 F. Supp. 2d 330, 384 (S.D.N.Y. 2002); *see also Feingold v. New York*, 366 F.3d 138, 152-53 (2d Cir. 2004) (holding that the "assignment of a disproportionately heavy workload" can constitute an adverse employment action); *Galabya*, 202 F.3d at 641 ("[A] transfer is an adverse employment action if it results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career."); *de la Cruz v. N.Y. City Human Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 21 (2d Cir.

1996) (finding that transfer from elite division could constitute adverse action); *Wright v. N.Y. City Off-Track Betting Corp.*, No. 05 Civ. 9790, 2008 U.S. Dist. LEXIS 22567, at *10 (S.D.N.Y. Dec. 15, 2004) ("The three remaining adverse actions alleged by plaintiff – deprivation of training, treatment of leave hours and assignment of menial 'make-work' tasks – appear to bear on either plaintiff's opportunities for professional growth and career advancement or directly on plaintiff's compensation. Accordingly, . . . I conclude that a jury could reasonably conclude that these events were adverse employment actions."); *Neratko v. Frank*, 31 F. Supp. 2d 270, 293 (W.D.N.Y. 1998) ("Allegations of inferior and less desirable work duties may constitute an adverse employment action.").

Plaintiff alleges that she was subjected to adverse employment actions as a result of her disability. Specifically, plaintiff contends that, as a result of her disability, she received a poor performance evaluation that resulted in her being denied a salary increase and a bonus in 2006; and she was terminated from her position at HSBC. Negative evaluations alone, "without any accompanying adverse result," are insufficient to constitute an adverse employment action. *Valentine v. Standard & Poor's*, 50 F. Supp. 2d 262, 283-84 (S.D.N.Y. 1999). Plaintiff has submitted evidence that, as a result of plaintiff's review, she was denied a salary increase and a bonus for the first time, and Ms. Lin placed plaintiff on a list of individuals to be "managed out" of HSBC. (Pl.'s Ex. P, Email from Jennifer Warner to Jolanda Mehler, Mar. 14, 2006.) In particular, plaintiff asserts that her negative 2005 evaluation, which was received in January 2006, resulted in her not receiving a pay increase or bonus for the year 2005, even though she had received a pay increase and bonus every year for at least the prior ten years. (McCowan Aff. ¶ 18.) The

combination of plaintiff receiving a negative evaluation in January 2006, being denied a salary increase, and being placed on a list of individuals to be "managed out" is sufficient to create genuine issues of material fact as to whether plaintiff suffered an adverse employment action for purposes of plaintiff's claim.[7] *See Bennett*, 136 F. Supp. 2d at 248 ("The only surviving adverse employment action is the denial of a raise in 1997."); *Naftchi v. N.Y. Univ.*, 14 F. Supp. 2d 473, 489-90 (S.D.N.Y. 1998) ("[I]t appears that the adverse employment action requirement is satisfied by the denial of raises for 1996, 1997, and 1998 and the elimination of [plaintiff's] office space in October 1997."). In any event, plaintiff also contends that her employment with HSBC was terminated as a result of her disability. Termination of employment is an adverse employment action sufficient to support a prima facie case of disability discrimination under the ADA. *Sista v. CDC Ixis North America, Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (asserting that there is not "any question that termination is an adverse employment action"). Thus, plaintiff has put forth sufficient evidence to overcome defendant's summary judgment motion on the adverse employment action requirement both with respect to her negative evaluation in January 2006 (and the

accompanying denial of a pay increase and bonus) and her termination in April 2006.[8]

Finally, on the issue of causation, plaintiff has offered more than mere "suspicions of discrimination" to support her claim that she was subjected to an adverse employment action as a result of her disability. *See Garvin v. Potter*, 367 F. Supp. 2d 548, 566 (S.D.N.Y. 2005). Instead, as discussed in detail *infra* on the issue of pretext, plaintiff has set forth evidence, including her own sworn testimony, that creates genuine issues of fact as to whether or not there were any actual problems with her performance. Moreover, plaintiff has presented evidence (including emails), from which, when construed most favorably to the

---

[7] To the extent that defendant claims that this alleged adverse employment action is time-barred under the ADA, the Court disagrees. Under the ADA, a plaintiff must file an administrative charge of discrimination with the EEOC no more than 300 days after an alleged discriminatory act to maintain a lawsuit on such act in federal court. *See* 42 U.S.C. § 2000e-5(e); 42 U.S.C. § 12117(a); *Harris v. City of N.Y.*, 186 F.3d 243, 247-48 (2d Cir. 1999). Here, the alleged negative evaluation and denial of pay increase/bonus took place in early 2006 and the EEOC complaint in September 2006. Thus, this claim is timely.

---

[8] To the extent that plaintiff argues that other incidents involving Ms. Lin's alleged excessive scrutiny and job assignments constitute independent adverse employment actions, the Court disagrees under the circumstances of this case. As a threshold matter, any discrete acts that occurred more than 300 days prior to the September 22, 2006 EEOC filing are time-barred under the ADA, and plaintiff has failed to set forth any facts that would warrant waiver, estoppel, or equitable tolling. *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). In any event, given the absence of any evidence that these alleged earlier incidents of excessive scrutiny or job assignments had any negative results, such as a denial of pay increase or bonus or a suspension, such alleged acts cannot constitute adverse employment actions as a matter of law. *See, e.g.*, *Hubbard v. Port. Auth. of N.Y. and N.J.*, No. 05 Civ. 4396 (PAC), 2008 WL 464694, at *12 (S.D.N.Y. Feb. 20, 2008); *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 248 (S.D.N.Y. 2001); *Castro v. N.Y. City Bd. Of Educ. Personnel*, No. 96 Civ. 6314 (MBM), 1998 WL 108004, at *7 (S.D.N.Y. Mar. 12, 1998) (citation omitted). The Court need not address at this juncture whether these acts are still admissible as to the remaining claims, including as background or on the issue of motivation.

plaintiff, a reasonable jury could conclude that Ms. Lin and Mr. Panarelli regarded plaintiff as incapable of performing her job properly because of her depression. Accordingly, plaintiff has presented sufficient evidence from which a reasonable jury could conclude that plaintiff was subjected to adverse employment actions due to defendant's employees' beliefs about her abilities resulting from her depression.

In sum, construing the evidence in the light most favorable to plaintiff, plaintiff has presented sufficient evidence to support a prima facie case of disability discrimination.

### 2. Pretext Analysis

Once plaintiff establishes a prima facie case, the burden shifts to the defendant to "'articulate some legitimate, nondiscriminatory reason for the'" adverse employment action. *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311 (1996)). If the defendant carries that burden, "the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Patterson*, 375 F.3d at 221 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). "'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Id.* (quoting *Burdine*, 450 U.S. at 253).

To meet this burden, the plaintiff may rely on evidence presented to establish her prima facie case as well as additional evidence. Such additional evidence may include direct or circumstantial evidence of discrimination.

*Desert Palace, Inc. v. Costa*, 539 U.S. 90, 97-101 (2003). It is not sufficient, however, for a plaintiff merely to show that she satisfies "*McDonnell Douglas*'s minimal requirements of a *prima facie* case" and to put forward "evidence from which a factfinder could find that the employer's explanation . . . was false." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 153 (2d Cir. 2000). Instead, the key inquiry is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of discrimination. *See id.* at 153-54; *Connell v. Consol. Edison Co. of N.Y., Inc.*, 109 F. Supp. 2d 202, 207-08 (S.D.N.Y. 2000).

As the Second Circuit observed in *James*, "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove—particularly discrimination." 233 F.3d at 157; *see also Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998) ("The thick accretion of cases interpreting this burden-shifting framework should not obscure the simple principle that lies at the core of anti-discrimination cases. In these, as in most other cases, the plaintiff has the ultimate burden of persuasion.").

Defendant has articulated a legitimate, non-discriminatory reason for Ms. McCowan's termination. In particular, defendant contends that Mr. Panarelli made the decision to terminate plaintiff based on the events of the April 11, 2006 meeting that was attended by Ms. McCowan, Mr. Panarelli, Ms. Lin, and Javier Evans. According to defendant, at that meeting, plaintiff was told that she would be reporting to Ms. Carboneri instead of Ms. Lin, and that as a result of that directive, plaintiff "became upset, said that

she refused to report to Ms. Carboneri and walked out of the room without being excused." (Def.'s 56.1 ¶ 35.) Defendant contends that after plaintiff left the meeting without his permission, Mr. Panarelli decided to terminate plaintiff's employment for insubordination. (Def.'s 56.1 ¶¶ 36-37.) Insubordination and other conduct that disrupts a workplace are legitimate reasons to terminate an employee. *Matima v. Cell*, 228 F. 3d 68, 79 (2d Cir. 2000).

The Court concludes that plaintiff has presented sufficient evidence to create a material disputed issue of fact regarding whether the reason for plaintiff's termination was a pretext for discrimination.[9] If plaintiff's evidence is credited by a jury, and construing that evidence most favorably to plaintiff, plaintiff has presented evidence from which a jury could conclude that Ms. Lin believed that, because of plaintiff's disability or perceived disability, plaintiff was incapable of performing tasks other than answering phones and filing papers. (*See* Pl.'s Ex. L, Email from Michelle Lin to Philip Panarelli, Feb. 27, 2006 ("If you still want to keep her employment with the Bank, I suggest that we assign her to handle special projects only (e.g., filings, pick up the RSU Dept. Phone)."). Ms. Lin communicated these concerns to her superiors at HSBC and pushed for plaintiff's termination. (*See, e.g.*, Pl.'s Ex. K, Email from Michelle Lin to Philip

Panarelli, Jan. 11, 2006 ("I am submitting my recommendation to terminate Chris's employment with HSBC for the benefits of the Department."); *id.* ("If the documentation I e-mailed you on 1/3/06 does not suffice to terminate Chris' employment with the Bank, please let me know what else I need to do."); Pl.'s Ex. J, Email from Michelle Lin to Karine Joseph, Sept. 7, 2005 ("Further to our conversation on 9/2, did you get a chance to look at Chris' file? Due to her medical history in the past and the fact that she has been c[o]ddled too many years in HSBC, I want to proceed cautiously with the most appropriate approach that HR will recommend."). Despite Ms. Lin's and Mr. Panarelli's testimony regarding their perception of plaintiff's abilities once she returned from leave, plaintiff testified that she was fully capable of resuming her duties after she returned to work. The Court is mindful that discriminatory considerations such as disability could play into the "formation of subjective impressions" by supervisors, such as Ms. Lin. *See Weiss v. JPMorgan Chase & Co.*, 332 F. App'x 659, 661 (2d Cir. 2009) (citation omitted). Thus, if all of plaintiff's evidence is credited, the Court concludes that a rational jury could infer that Ms. Lin believed that plaintiff was impaired at thinking and functioning due to her disability, and that, as a result thereof, plaintiff was terminated. (*See* Pl.'s Ex. R, 2006 Evaluation of Chris McCowan at 3 ("Chris was on leave of absence for most of the first half of 2005. She came back to work on 4/27/05 and has tried her best to assume her role as a Senior Commercial Support Specialist.").)

Similarly, plaintiff has created genuine issues of fact regarding pretext as it relates to her performance evaluation in early 2006 for the year 2005. For example, plaintiff points out that, even on plaintiff's 2006 review, in which Ms. Lin rated plaintiff's performance

---

[9] The Court reaches the same conclusion as it relates to the negative performance evaluation in 2006 and the accompanying denial of a pay increase or bonus. Although defendant contends that the negative evaluation and pay decision were based upon her poor performance, plaintiff's evidence, which is discussed above, is sufficient to raise a genuine issue of fact on the issue of pretext as it relates to that articulated non-discriminatory reason.

as "Marginal," Ms. Lin still noted that plaintiff "serviced customers with courtesy" and "maintained positive working relationships with the relationship managers and RSU staff." (Pl.'s Ex. Q.) That same review also noted that "Chris completed her assignments on a routine basis and assumed the additional responsibilities of the RSU staff when they were on vacation." (*Id.*) All of plaintiff's prior years' reviews indicated that she had performed her job well, was cooperative, and was a team player. (*See* Pl.'s Ex. R.) Prior positive performance evaluations may be used to demonstrate pretext. *See Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 382-83 (2d Cir. 2001) ("To the extent that the Defendant proffered Zimmermann's alleged poor performance as the reason for her discharge, she provided ample evidence of good performance and the complete absence of any negative evaluations."). Moreover, Ms. Lin asserted that she scrutinized plaintiff's behavior at work due to plaintiff's excessive personal phone calls, but plaintiff testified at her deposition that she did not engage in personal phone calls at work. (*See* McCowan Dep. at 101-06.) Thus, there are disputed issues of fact regarding plaintiff's performance at work upon her return from disability leave and sufficient other evidence in the record to require the issue of pretext to be submitted to the jury.

Although defendant contends that any alleged discriminatory motivation by Ms. Lin is irrelevant because the termination decision was made by Ms. Lin's boss (Mr. Panarelli), the Court finds that argument unpersuasive. There is evidence in the record that Ms. Lin communicated her unfavorable opinion of plaintiff through email and formal evaluations. Thus, a rational jury could conclude, if Ms. Lin's discriminatory motives are proven, that the decision to terminate

plaintiff was made as a result of Ms. Lin's urging to terminate plaintiff based on such discriminatory motives. In other words, there is evidence that Ms. Lin's criticisms and evaluations of plaintiff were considered by the actual decisionmaker—here, Mr. Panarelli. Under the so-called "cat's paw" theory of liability, "'the impermissible bias of a single individual can infect the entire group of collective decisionmakers,' at least when the decisionmakers are overly deferential to the biased individual's recommendations." *Baron v. N.Y. City Dep't of Educ.*, No. 06-CV-2816 (FB)(MDG), 2009 WL 1938975, at \*6 (E.D.N.Y. 2009) (citing *Fullard v. City of N.Y.*, 274 F. Supp. 2d 347, 357 (S.D.N.Y. 2003) and quoting *Jamieson v. Poughkeepsie City Sch. Dist.*, 195 F. Supp. 2d 457, 474 (S.D.N.Y. 2002)); *see Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 450 (2d Cir. 1999) ("We recognize that the impermissible bias of a single individual at any stage of the promoting process may taint the ultimate employment decision in violation of Title VII. This is true even absent evidence of illegitimate bias on the part of the ultimate decision maker, so long as the individual shown to have the impermissible bias played a meaningful role in the promotion process." (internal citation omitted)); *see also Dumas v. Union Pac. R.R.*, 294 F. App'x 822, 826 (5th Cir. 2008) ("[A] plaintiff can make out a prima facie case by showing that other employees, with discriminatory motives, had influence or leverage over the official decisionmaker." (citation and internal quotation omitted)); *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1179 n.7 (10th Cir. 2006) ("[I]n certain circumstances, an employer can be held liable for a subordinate employee's prejudice even if the decision-maker lacked the required intent where the decision-maker failed to independently investigate the subordinate's complaint against the former employee and instead merely followed the

biased recommendation of the subordinate."); *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990) ("[If the committee] acted as the conduit of a [supervisor's] prejudice—his cat's paw—the innocence of its members would not spare the company from liability."); *Sadki v. Suny Coll. at Brockport*, 310 F. Supp. 2d 506, 515 n.5 (W.D.N.Y. 2004) (endorsing the cat's paw theory of employer liability for discrimination and noting that "[c]ertainly it would not be surprising if a university president gives great deference to a dean's recommendations for faculty positions, and the manner in which [the president] endorsed [the dean's] recommendation—'I agree with your analysis. PY'—suggests that [the president] did so here."). Indeed, Mr. Panarelli testified that he relied on Ms. Lin's evaluation of plaintiff in forming his own perceptions about plaintiff: "Michelle was her manager. Whatever Michelle felt was important, however she wanted to handle the group. I respected Michelle and I let Michelle run the department." (Panarelli Dep. At 61:14-17.) Thus, a reasonable jury could find that Ms. Lin's alleged discriminatory bias toward plaintiff, if proven, infected the decision-making process that ultimately resulted in plaintiff's termination.

Furthermore, although defendant claims that Mr. Panarelli made the decision to terminate plaintiff for insubordination after the April 11 meeting, plaintiff claimed that she left the meeting because she was feeling ill and that she did provide an explanation before leaving the room. Plaintiff further testified that, although she did express dissatisfaction with the decision that she would report to Ms. Carboneri going forward, she did not refuse to do so. Plaintiff claims that, upon being told that she would be now reporting to Ms. Carboneri, she asked how reporting to Ms. Carboneri would be any different, but did not receive an answer. (Pl.'s

56.1 ¶ 33.) Plaintiff claims that she was told by Mr. Panarelli to "think it over." (*Id.*) Plaintiff also has testified that she left the meeting because she was feeling ill, so she excused herself to the ladies' room. (*Id.*) She thereafter did not return to the meeting because she believed that the meeting was over. Thus, there is a disputed issue of fact as to the reasoning underlying plaintiff's termination from HSBC: specifically, there is a disputed issue as to whether there was insubordination by plaintiff on April 11 or whether the claim of plaintiff's insubordination was a mere pretext for Ms. Lin's reasoning.

In sum, although defendant has pointed to portions of the record that defendant argues undermine the strength of various aspects of plaintiff's proffered evidence of discrimination as it relates to her negative evaluation and termination in 2006, the overall evidence is sufficient, when construed most favorably to plaintiff, to survive defendant's summary judgment motion and have the discrimination claims, including the critical issues of credibility, decided by a jury.

B. Retaliation

Plaintiff next brings a claim that defendant retaliated against her by terminating her because she submitted a complaint disputing the allegedly false accusations in her January 2006 performance evaluation and she notified defendant that she intended to file a "formal" harassment complaint against Ms. Lin based on Ms. Lin's alleged discriminatory conduct. In particular, plaintiff informed Mr. Panarelli that she believed Ms. Lin may have been treating her in this manner due to her depression. (Def.'s 56.1 ¶ 43; Pl.'s 56.1 ¶ 43.) According to plaintiff, she also complained about Ms. Lin's harassment to Javier Evans and Jennifer Warner in 2006. (Pl.'s 56.1 ¶

44.) As set forth below, although defendant argues that plaintiff's retaliation claim cannot survive summary judgment, the Court disagrees.

### 1. Legal Standard

As in the case of discrimination claims, a claim of retaliation is analyzed under the three-step burden-shifting analysis set forth by the Supreme Court in *McDonnell Douglas*. *See Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citing *Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002)); *Lovejoy-Wilson v. Noco Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001) ("We analyze a retaliation claim under the ADA using the same framework employed in Title VII cases."). To establish a prima facie case of retaliation, a plaintiff must demonstrate by a preponderance of the evidence that: (1) he engaged in a protected activity; (2) the employer was aware of his activity; (3) the employer took adverse action against him; and (4) a causal connection exists between the protected activity and the adverse action, *i.e.*, that a retaliatory motive played a part in the adverse employment action. *Sista v. CDC Ixis N. Amer., Inc.*, 445 F.3d 161, 177 (2d Cir. 2006); *see also Treglia*, 313 F.3d at 719. As stated above, the Second Circuit has characterized the evidence necessary for the plaintiff to satisfy this initial burden as "minimal" and "*de minimis*."

A plaintiff may establish a causal connection between the protected activity and the adverse employment action either through direct evidence of retaliatory animus or by circumstantial evidence. *See Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (holding that a causal connection may be "established indirectly with circumstantial evidence, for example, by showing that the protected activity was followed by discriminatory treatment or through evidence of disparate treatment of employees who engaged in similar conduct or directly through evidence of retaliatory animus"). Where there is no direct evidence of retaliatory animus or a showing of disparate treatment of fellow employees who engaged in the same conduct, proof of causation may be shown indirectly, by demonstrating that the protected activity was followed closely by a retaliatory action. *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000); *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 1991) ("[T]he causal connection needed for proof of a retaliation claim 'can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.'" (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (internal citation omitted))). Although the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action[,]" *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir. 2001), some district courts have generally concluded that "a passage of two months between the protected activity and the adverse employment action seems to be the dividing line." *Cunningham v. Consol. Edison, Inc.*, No. 03 Civ. 3522 (CPS), 2006 WL 842914, at *19 (E.D.N.Y. Mar. 28, 2006) (collecting cases). However, because the Second Circuit has found periods well beyond two months to be sufficient to suggest a causal relationship under certain circumstances, courts must carefully consider the time lapse in light of the entire record. *See, e.g.*, *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980) (holding eight-month gap between EEOC complaint and retaliatory action suggested a causal relationship); *see also Richardson v.*

*N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 446-47 (2d Cir. 1999), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) (holding abusive acts within one month of receipt of deposition notices may be retaliation for initiation of lawsuit more than one year earlier).

In determining whether a plaintiff has satisfied this initial burden, the Court's role in evaluating a summary judgment request is "to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Jute v. Hamilton Sunstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005). Further, as stated above, once a plaintiff has set forth a prima facie case, the burden shifts to defendant to show that it had a legitimate, non-discriminatory reason for the adverse employment action. *Sista*, 445 F.3d at 169. If such a showing is made, the burden shifts back to plaintiff to prove that the proffered reason is merely a pretext for unlawful discrimination. *Id.*

## 2. Application

Plaintiff argues that defendant retaliated against her for complaining about Ms. Lin's conduct. Specifically, plaintiff points to the complaint she filed objecting to her January 2006 performance evaluation (Pl.'s Ex. L, Review Response filed by Christiane McCowan), and her email to Mr. Panarelli on March 1, 2006, notifying Mr. Panarelli of her intention to file a "formal" harassment complaint against Ms. Lin. (Pl.'s Ex. Z, Email from Christiane McCowan to Philip Panarelli, Mar. 1, 2006.) On March 23, 2006, plaintiff emailed Javier Evans regarding Ms. Lin's behavior. (Pl.'s Ex. FF, Email from Christiane McCowan to Javier Evans, Mar. 23, 2006.) In those emails, plaintiff stated that she felt that Ms. Lin had been harassing

her since February 2004. (*Id.*) On April 3, 2006, Ms. Lin emailed Mr. Panarelli, stating that Chris McCowan intends to file a lawsuit against her and asking how she should interact with plaintiff going forward and whether she should continue to manage plaintiff. (Pl.'s Ex. DD, Email from Michelle Lin to Philip Panarelli, Apr. 3, 2006.) Plaintiff's employment at HSBC was terminated on April 11, 2006. Plaintiff alleges that the temporal proximity between her March 2006 complaints about Ms. Lin and her subsequent termination "gives rise to a strong inference that she was terminated in retaliation for her complaints against Lin for harassment and discrimination based on her disability." (Pl.'s Opp. at 27.)

Defendant does not contest, for purposes of the motion, that plaintiff participated in protected activity of which her supervisors were aware or that plaintiff suffered an adverse employment action, specifically, termination. Defendant argues, however, that plaintiff cannot establish a causal connection between her complaints regarding her review and Ms. Lin to Mr. Panarelli and the decision to terminate plaintiff. According to defendant, there was an intervening independent event that led to plaintiff's termination—namely, plaintiff's insubordination on April 11—and, therefore, summary judgment is warranted. Specifically, defendant argues that there was not temporal proximity between plaintiff's protected activity and the adverse action, because several months elapsed between the protected activity and plaintiff's termination. According to defendant, plaintiff first complained about Ms. Lin's conduct toward her on September 13, 2005. (Panarelli Dec. ¶ 4 ("In September 2005, I received two e-mails from plaintiff in which she again stated that she believed Ms. Lin was treating her unfairly and stated for the first time to me that she

thought Ms. Lin's treatment of her might possibly be because of her age and for having been on disability leave.").) Thus, according to defendant, the temporal proximity between plaintiff's complaints and her termination is too great to establish a causal connection.

Having reviewed the record, and construing the evidence most favorably to plaintiff, the Court concludes that plaintiff has put forth sufficient circumstantial evidence of a causal connection between her complaints about Ms. Lin and the alleged adverse action to survive summary judgment on the retaliation claim. In particular, plaintiff expressed her intention to file a formal complaint against Ms. Lin less than two months before she was terminated. Although defendant points to prior complaints by plaintiff regarding Ms. Lin's treatment of her, the earliest complaint was only eight months prior to plaintiff's termination. As a threshold matter, the Second Circuit has found periods of eight months or longer to be sufficient to suggest a causal relationship for purposes of a retaliation claim, when combined with other evidence. *See Grant*, 622 F.2d at 45-46; *Richardson*, 180 F.3d at 446-47. In any event, it was less than two months prior to her termination that plaintiff threatened a formal complaint or lawsuit against Ms. Lin. Viewing these facts in the light most favorable to the plaintiff and drawing all reasonable inferences therefrom, the Court declines to rule that no reasonable jury could determine that plaintiff's protected activity and the ensuing act of alleged discrimination were not causally connected. Based upon the timing of the termination in connection with the protected activity and the other evidence discussed *supra* with respect to the discrimination claims, plaintiff has created genuine issues of fact regarding whether defendant's proffered reason for plaintiff's termination was a mere pretext and whether a

retaliatory motive played a role in the adverse employment action. Thus, summary judgment on this issue is unwarranted.

C. Hostile Work Environment Claim

Plaintiff also has brought a disability-based hostile work environment claim. Defendant argues that it is entitled to summary judgment on the hostile work environment claim because plaintiff has failed adduce sufficient evidence to survive summary judgment. As set forth below, the Court disagrees.

1. Legal Standard

A hostile work environment, in violation of Title VII, is established by a plaintiff showing that his or her workplace was "permeated with 'discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *see also Terry v. Ashcroft*, 336 F.3d 128, 147 (2d Cir. 2003). "Isolated instances of harassment ordinarily do not rise to this level." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (holding that "simple teasing . . . , offhand comments, and isolated incidents (unless extremely serious)" will not amount to discriminatory changes in the "terms and conditions of employment") (internal citations and quotations omitted); *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) (holding that "[i]solated, minor acts or occasional episodes do not warrant relief"); *Williams v. County of Westchester*, 171 F.3d 98, 100-01 (2d Cir. 1999) (holding that "to meet his burden, the

plaintiff must show more than a few isolated incidents" and "evidence solely of sporadic" discrimination does not suffice (internal quotations omitted)); *Knight v. City of N.Y.*, 303 F. Supp. 2d 485, 500 (S.D.N.Y. 2004) (denying hostile work environment claim where incidents were "too remote"); *Ruggieri v. Harrington*, 146 F. Supp. 2d 202, 217-18 (E.D.N.Y. 2001) (holding that a "collection of administrative mixups, minor annoyances, and perceived slights cannot be considered severe or pervasive harassment"); *Francis v. Chem. Banking Corp.*, 62 F. Supp. 2d 948, 959 (E.D.N.Y. 1999) (dismissing hostile work environment claim where plaintiff only alleged four incidents).

The conduct in question must be "severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (citation and quotation omitted). Other factors to consider include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Terry*, 336 F.3d at 148 (quotation and citation omitted). The Second Circuit has noted, however, that "[w]hile the standard for establishing a hostile work environment is high, . . . [t]he environment need not be 'unendurable' or 'intolerable.'" *Id.* (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000)). Moreover, although a hostile work environment generally consists of "continuous and concerted" conduct, "a single act can create a hostile work environment if it in fact work[s] a transformation of the plaintiff's workplace." *Feingold*, 366 F.3d at 150 (quotations and citation marks omitted) (alteration in original).

Further, to succeed on a hostile work environment claim in the instant case, plaintiff must link the actions by defendants to her disability. Although "[f]acially neutral incidents may be included, of course, among the 'totality of the circumstances' that courts consider in any hostile work environment claim," plaintiff nevertheless must offer some evidence from which a reasonable jury could infer that the facially neutral incidents were in fact discriminatory. *Alfano v. Costello*, 294 F.3d 365, 378 (2d Cir. 2002); *see also Nakis v. Potter*, No. 01-CV-10047 (HBP), 2004 WL 2903718, at *20 (S.D.N.Y. Dec. 15, 2004) (holding that "[h]ostility or unfairness in the workplace that is not the result of discrimination against a protected characteristic is simply not actionable" under Title VII (citing *Brennan*, 192 F.3d at 318 ("A plaintiff must also demonstrate that she was subjected to the hostility because of her membership in a protected class."))).

### 2. Application

In the instant case, plaintiff asserts that certain remarks related to her disability/intelligence were made by Ms. Lin during her employment resulting in a hostile work environment. Defendant argues that those alleged isolated comments were not sufficiently severe or pervasive to survive summary judgment on the hostile work environment claim. However, plaintiff also relies on facially neutral incidents in support of her hostile work environment claim. In particular, plaintiff asserts, among other things, that Ms. Lin subjected her to the following disparate treatment based upon her disability, to which plaintiff alleges her coworkers were not subjected: Ms. Lin joked around with plaintiff's coworkers, but not with plaintiff; Ms. Lin spoke in a louder tone of voice when discussing plaintiff's mistakes with her than when she discussed coworkers'

mistakes; Ms. Lin did not permit plaintiff to work a "flex-time" schedule when plaintiff asked to do so in 2003 or 2004 because coverage was needed for the later hours of the workday; Ms. Lin monitored plaintiff's performance more closely than the performance of her coworkers; Ms. Lin assigned plaintiff to archive files for a week at the start of each year; Ms. Lin sent plaintiff more work-related email than her co-workers received; plaintiff's conversations were monitored; plaintiff's annual review was given to her later than her coworkers received their reviews in 2003 or 2004; plaintiff was treated as though she had no intellectual ability and was incapable of performing her job duties; plaintiff was excluded from work-related and social conversation; Ms. Lin told her on two occasions, "You must have cracked"; Ms. Lin told her "You have no manners. If everyone acted like you, it would be a zoo"; Ms. Lin consistently asked plaintiff to explain her medical condition; plaintiff was subjected to excessive scrutiny at work; Ms. Lin would call and email plaintiff daily, questioning and challenging her work; Ms. Lin accused plaintiff of making errors that were in fact made by plaintiff's coworkers; Ms. Lin paced behind plaintiff's desk while she spoke on the phone to the Assistant District Attorney regarding her mother's death; Ms. Lin alleged that plaintiff regularly engaged in personal phone calls when plaintiff did not in fact do so; plaintiff was not permitted to engage in social conversation with other coworkers, even though her coworkers conversed with one another on a regular basis; and Ms. Lin changed RSU lunch schedules to accommodate the team, but required plaintiff to take her lunch alone, which caused plaintiff to have trouble meeting her deadlines. (Pl.'s 56.1 ¶ 40.) Plaintiff has submitted evidence that supports her claim that Ms. Lin's conduct—including questioning plaintiff's work (*e.g.*, McCowan

Dep. at 71-72, 83-87) and monitoring plaintiff's phone calls (Pl.'s 56.1 ¶ 31)—worsened her medical condition. (Aff. of Diana Su at ¶¶ 5, 11, 12.)

As to the facially neutral incidents, the Court must determine whether there is circumstantial evidence or some other basis from which a jury could rationally infer these alleged incidents were based on plaintiff's disability. Having carefully reviewed the record in the light most favorable to plaintiff, the Court is unable to conclude as a matter of law that these facially neutral incidents should not be considered. Although it is not the only inference that can be drawn from these facts, these facially neutral incidents could be consistent with an employer who is treating an employee differently based upon a disability or a perceived disability. Moreover, when the facially neutral incidents are combined with the alleged comments, a rational jury could conclude, if it found that all of these incidents occurred and were motivated by plaintiff's disability or perceived disability, that the conduct was sufficiently severe or pervasive to alter the conditions of plaintiff's employment and create an abusive working environment. Thus, summary judgment on the hostile work environment claim is unwarranted.

## IV. CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is granted in part and denied in part. Specifically, defendant's motion for summary judgment with respect to plaintiff's claim of discrimination based upon an actual disability under the ADA is granted. The defendant's motion for summary judgment on the remaining claims is denied.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: February 12, 2010
      Central Islip, NY

* * *

Plaintiff is represented by Neil Frank, Pamela Jae Naples, and Peter Arcadia Romero of Frank & Associates, P.C., 500 Bi-County Boulevard, Suite 112N, Farmingdale, NY 11735. Defendant HSBC is represented by James R. Grasso and Laurie S. Leonard of Phillips Lytle LLP, 3400 HSBC Center, Buffalo, NY 14203 and Meredith Leigh Friedman, HSBC Bank USA, National Association, 425 Fifth Avenue, 7th Floor, New York, NY 10018.